.(52 Misc. Rep. 11)

DUFFY v. MULLER et al.

(Supreme Court, Special Term, New York County.   November, 1906.)

PARTITION—SALE IN PARTITION—FEES OF REFEREE.

Under Code Civ. Proc. § 3297, providing that fees of a referee selling realty under a judgment are the same as those of the sheriff, and section 3307, subd. 7, fees of a referee making a sale in partition are to be computed on the price the property brings.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partition, § 331.]

Action by Annie M. Duffy against Alois C. Muller and others.   Application by referee appointed in partition to sell the premises, for the determination of the amount of his fees.   Granted.

William J. A. McKim, for referee.

Roswell S. Nichols, for defendants.

LEVENTRITT, J.   The referee is entitled to a sale fee on the amount bid and to commissions on the amount in his hands for distribution.   Section 3297 of the Code of Civil Procedure provides:

"The fees of a referee appointed to sell real property pursuant to a judgment in an action, are the same as those allowed to the sheriff, and he is allowed the same disbursements as the sheriff."

The provisions of subdivision 7 of section 3307 limit the fee basis in the case of a sheriff to the amount collected; in other words, the amount for which he is accountable.   The premises in this action were sold by the referee at $18,100, free and clear.   Upon that sum the respective shares of the parties were measured, and within the meaning of section 3307 that is the amount collected and for which the referee is accountable.   Upon that amount, therefore, should his sale fee be computed.   This construction of section 3307 is emphasized by the provisions of section 3297, which create a distinction between the sale fee and the commissions on distribution, limiting only the latter to the amount actually distributed.   The referee should be allowed $30 for applying the respective shares of the three parties to whom the bid was assigned.

Ordered accordingly.

---

(117 App. Div. 188)

McCANN v. INTERURBAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department.   January 25, 1907.)

MASTER AND SERVANT—INJURIES TO SERVANT—SAFE APPLIANCES—STREET RAILWAYS.

In an action for injuries to a motorman, it appeared that plaintiff's car had been equipped with a new plow, a device passing through the slot rail to take up the electric current, that his car was a light one, and that it stopped suddenly, whereby he was injured, but that he succeeded in starting the car, and on a subsequent trip discovered that at the point where the car stopped the slot rail was closed up for about two feet, so that the opening was about a half an inch wide, whereas, elsewhere it was about three-fourths of an inch.   It was shown that the plow was half an inch wide and that, if the car had been a heavy one or if the

plow had been worn slightly, there would have been no trouble. It did not appear that plaintiff had any difficulty at such point thereafter. There was some evidence that an inspector had stated that there was a defect in the slot rail in the vicinity of the accident. *Held*, that the evidence showed no negligence.

Appeal from Trial Term.

Action by Andrew W. McCann against the Interurban Street Railway Company. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, HOUGHTON, and LAMBERT, JJ.

John V. Bouvier, Jr., for appellant.
Oscar A. Campbell, for respondent.

LAMBERT, J. The plaintiff was injured in an accident upon the defendant's car on the 15th day of December, 1902. He was employed as a motorman, and on the day in question was sent out on a light four-wheeled car. The car had been newly equipped with a plow, a device which passes through the slot rail in the center of the defendant's tracks, transmitting the electric current from the cable below to the motor on the car. No defect is suggested in this plow. It is stated only that it is thicker at the point where it passes through the slot rail than an old one. The accident occurred at or near the intersection of North Moore street and West Broadway, in the borough of Manhattan, and the negligence alleged is a failure on the part of the defendant to provide suitable, sufficient, and safe appliances, place to work, roadbed and connections thereto, and track, and that the defendant had notice of these defects.

The plaintiff's story (and he does not call the conductor of the car or any other person who is alleged to have seen the accident) is to the effect that on the morning of the day mentioned, at 6:50, he was approaching the street intersection, running downgrade, with the current shut off; that he saw a fire marker, and that under the rules of the company it was his duty to bring his car to a full stop; that he was applying his brake and had his weight upon his right arm; and that, while endeavoring to bring his car to a standstill, the car stopped suddenly, throwing him against the gate, resulting in the injuries for which he is seeking to recover. He made no examination of his car or of the track at the time of the accident. He says he stood there with his car for a little time, and then went on his way, running the car until about 4 o'clock in the afternoon; that on his second trip back, at about 9:30 he got off his car at the point of the accident to find out the cause, and discovered that the slot rail had closed up to such an extent that for a distance of 2½ feet the opening was only about half an inch, whereas, at other points it was about three-quarters of an inch. These measurements do not appear to be very accurate. He says that at the narrow place he could only pass one finger through the slot, while at the other points he could insert two fingers; but he does not say how much room there was outside of the single finger, or how tightly the two fingers were pressed. He says that the plow was about

half an inch in thickness where it passed through the slot, and that if
this had been a heavy car it would have passed through without a jar;
and, while he must have started his car from a standstill on resuming
his journey, he makes no mention of experiencing any difficulty in
starting the car or in operating it over this same place during the day.
According to his own estimates, the space was about half an inch wide,
and the plow was likewise half an inch wide, and there is the intima-
tion that there would have been no difficulty except that the defendant
had equipped the car with a new plow. The plaintiff's own testimony
indicates clearly that he had no intimation of the cause of the trouble
at the time of the accident, and he did not then look to the condition
of the tracks or the groove rail; but, when passing along on his second
trip at 9 :30, he got off the car and found this alleged defect, which,
he testified, over the defendant's objection and exception, was in the
same condition as at the time of the accident, although he was shown
not to have known anything about its condition at that time.

Where is the actionable negligence? What man of ordinary pru-
dence and care, looking upon this alleged defect, would anticipate the
accident, or one of a similar character? Actionable negligence is not
predicated upon what we might see could have been done to prevent
the accident, after the accident has happened, but upon the degree of
care which ordinarily prudent men, looking at the situation before the
accident has happened, would say was likely. in the exercise of ordina-
ry care, to occur. And, in the light of this evidence, what man of
ordinary care, knowing the equipment of these cars and looking at
this alleged defect, would anticipate that it would result in causing a
sudden stopping of a car and producing injury? The plaintiff had
had 25 years' experience in running cars, and several years as a motor-
man; but it does not appear to have suggested itself to his mind that
the slot rails were out of order until several hours after the accident,
and then he was obliged to leave his car to discover the defect, and
the defect, if in fact it existed, was so slight that the plaintiff tells
us it would not have jarred a heavy car, while his own car appears
to have been operated through the same place all during the day, and
to have been started without difficulty (for none is suggested) from
the very point where it came to a sudden standstill. Assuming, as
we may, in the light of the verdict of the jury, that this accident re-
sulted from the closing up of the slot, the facts do not justify the con-
clusion of negligence on the part of the defendant. If the slot had
been one-sixteenth of an inch wider than it was, or if the plow which
was in use had been worn slightly, an accident such as is described
could not have happened; and to say that the defendant owed a degree
of care which should have discovered and remedied so slight a defect
—that it should, in the exercise of reasonable care, have anticipated
that the defect would result in this or a similar accident—is carrying the
doctrine of negligence to the point of absurdity.

It is true, of course, that there was some very loose testimony on
the part of an ex-employé, to the effect that he had, while employed
as a starter, with some duty to report defects, been told by an inspector
some days before the accident, and again on the morning of the ac-
cident, that there was a defect in the slot rail in the vicinity where

this accident occurred. But the person who is alleged to have made this report was not produced, nor was the point definitely fixed, and at most it could only go to the question of notice. As we have seen, if the situation had been called to the attention of the defendant, there was nothing from which reasonable minded men would have been led to believe that the accident described in the testimony would result. Indeed, if the plaintiff himself, with all his experience, had seen the slot as it may be assumed to have been at the moment of the accident, is it probable he would have anticipated that it would impede the running of the car and cause it to stop suddenly? He knew in a general way that the plow required about half an inch of space. He would have seen that the slot was about half an inch wide, and, knowing that cars had operated over it the day before, he would scarcely feel that the company was negligent in not opening the slot to the full width, as it was found in other places. And, if the plaintiff would not regard it as negligent before the happening of the accident, he is in no better position after the accident has happened. It is reasonable care which the law demands as between the master and servant; and, because there is no evidence in this case to show that the defendant had failed to exercise that reasonable care in its equipment, construction and maintenance, there was no question for the jury, and it was error to permit them to speculate upon the question.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM and McLAUGHLIN, JJ., concur. PATTERSON, P. J., and HOUGHTON, J., concur in result.